1

2

3

4                    **UNITED STATES DISTRICT COURT**

5                         **DISTRICT OF NEVADA**

6   LEO DAVID HANSON,                          3:13-cv-00397-MMD-WGC

7                              Plaintiff,    <u>**REPORT & RECOMMENDATION OF**</u>
                                             <u>**U.S. MAGISTRATE JUDGE**</u>
8          v.

9   PAULI, et. al.,

10                             Defendants.

11

12          This Report and Recommendation is made to the Honorable Miranda M. Du, United

13   States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28

14   U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Defendant

15   Kevin Pauli's Motion for Summary Judgment. (Doc. # 20.)[1] Plaintiff filed an Opposition and

16   Cross-Motion for Summary Judgment. (Doc. # 31.) Defendant Pauli filed a reply. (Doc. # 33.)

17          After a thorough review, the court recommends that defendant Pauli's motion be granted

18   and Plaintiff's motion be denied.

19                              **I. BACKGROUND**

20          Plaintiff, a pro se litigant, is a prisoner in the custody of the Nevada Department of

21   Corrections (NDOC). (Pl.'s Compl., Doc. # 4.) The events giving rise to this action took place

22   while Plaintiff was housed at High Desert State Prison (HDSP). (*Id*.) He brings this action

23   pursuant to 42 U.S.C. § 1983. (*Id*.)

24          On screening, the court determined Plaintiff could proceed with his claim of excessive

25   force under the Eighth Amendment against defendants Starling and Pauli. (Screening Order,

26   Doc. # 3.) Plaintiff alleges that on May 29, 2013, he was complying with orders to lie down on

27   _____

28          [1] Refers to court's docket number. Unless otherwise indicated, all page number references are to the court's
     docketed page numbers.

the ground on his stomach, when without justification, defendant Starling "bounced [his] head on the ground" and "began punching [him] in the head and around [his] neck area. (Doc. # 4 at 4-5.) He contends that defendant Pauli then shot him with a 12-gauge shotgun, striking him in the bottom of his left foot and back of his right leg. (*Id*.)

The Attorney General filed a notice that it was not accepting service on behalf of Pauli or Starling, as they were not currently employed by NDOC. (Doc. # 9.) Their last known addresses were filed under seal. (Doc. # 10.) The court ordered the Clerk to issue summons and other forms so that the U.S. Marshal could serve the defendants at the addresses filed under seal. (*See* Docs. # 12, # 14, # 15, # 17.) Defendant Pauli then filed his motion for summary judgment, represented by the Attorney General's Office. (Doc. # 20.)

Defendant Starling was not served until March 5, 2014. (Doc. # 30.) Starling requested and was granted an extension of time to file a responsive pleading (Docs. # 32, # 34), and filed his answer on May 19, 2014. (Doc. # 34.)

The court issued a scheduling order on May 20, 2014. (Doc. # 41.) Discovery must be completed by August 18, 2014, and dispositive motions are to be filed by September 17, 2014. (*Id*.)

In his motion for summary judgment, defendant Pauli argues that his use of force on May 9, 2013, was justified and reasonable because Plaintiff attacked Correctional Officer Starling and ignored repeated commands to cease fighting as well as a warning shot before defendant Pauli fired a live round with pellets in Plaintiff's direction to gain his compliance. (Doc. # 20.) He further argues that he is entitled to qualified immunity because a reasonable officer would not have known that abiding by NDOC's use of force policy would violate the Eighth Amendment. (*Id*.)

In Plaintiff's opposition and cross-motion for summary judgment, he argues that consideration of defendant Pauli's motion should be continued until he has a chance to conduct discovery. (Doc. # 31.) He also contends that he was lying down on the ground and defendant Starling was still punching him at the time defendant Pauli fired the round at him. (*Id*. at 7.) He further disputes statements attributed to him in the report made after the incident by defendant

1    Starling, utilized in support of defendant Pauli's motion for summary judgment. (*Id*. at 8.) He

2    contends that defendant Starling was using force against him maliciously and that defendant

3    Pauli must have observed this when he fired the round at Plaintiff. (*Id*. at 11-12.)

4                                    **II. LEGAL STANDARD**

5            "The purpose of summary judgment is to avoid unnecessary trials when there is no

6    dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

7    F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary

8    judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*,

9    525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

10   (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine

11   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

12   Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at

13   issue, summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

14   250 (1986).

15          A party asserting that a fact cannot be or is genuinely disputed must support the
16          assertion by:
             (A) citing to particular parts of materials in the record, including depositions,
17          documents, electronically stored information, affidavits or declarations,
             stipulations (including those made for purposes of the motion only), admissions,
18          interrogatory answers, or other materials; or
             (B) showing that the materials cited do not establish the absence or presence of a
19          genuine dispute, or that an adverse party cannot produce admissible evidence to
20          support the fact.

21   Fed. R. Civ. P. 56(c)(1)(A), (B).

22          If a party relies on an affidavit or declaration to support or oppose a motion, it "must be

23   made on personal knowledge, set out facts that would be admissible in evidence, and show that

24   the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

25           In evaluating whether or not summary judgment is appropriate, three steps are necessary:

26   (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as

27   to a material fact; and (3) considering the evidence in light of the appropriate standard of proof.

28   *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect

1    the outcome of the suit under the governing law will properly preclude the entry of summary

2    judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

3         In deciding a motion for summary judgment, the court applies a burden-shifting analysis.

4    "When the party moving for summary judgment would bear the burden of proof at trial, 'it must

5    come forward with evidence which would entitle it to a directed verdict if the evidence went

6    uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing

7    the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*

8    *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations

9    omitted). In contrast, when the nonmoving party bears the burden of proving the claim or

10   defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

11   an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party

12   failed to make a showing sufficient to establish an element essential to that party's case on which

13   that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-

14   25 (1986).

15        If the moving party satisfies its initial burden, the burden shifts to the opposing party to

16   establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*

17   *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of

18   material fact, the opposing party need not establish a genuine dispute of material fact

19   conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a

20   jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.,*

21   *Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and

22   citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on

23   conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go

24   beyond the assertions and allegations of the pleadings and set forth specific facts by producing

25   competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at

26   324.

27        That being said,
     [i]f a party fails to properly support an assertion of fact or fails to properly address
28   another party's assertion of fact as required by Rule 56(c), the court may: (1) give

an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

### III. DISCUSSION

**A. Summary of Argument**

**1. Defendant Pauli's Motion**

On May 29, 2012, Correctional Officer Starling was assigned to Search and Escort at HDSP. (Doc. # 20 at 3; Doc. # 20-1 at 2.) At approximately 1:55 p.m., Correctional Officer Starling was escorting thirteen newly-admitted inmates from the 5/6 quad yard into the 7/8 quad yard to show them their housing units. (*Id*.) In addition to the thirteen inmates Correctional Officer Starling was escorting, there were many unrestrained inmates on the 7/8 quad yard. (*Id*.)

According to Correctional Officer Starling's report made after the incident, Plaintiff, who was on the 7/8 yard quad, initiated a verbal confrontation with Correctional Officer Starling, yelling that he felt Correctional Officer Starling was disrespecting him. (*Id*.) Officer Pauli, who at the time was assigned as the "gunrail" officer for units 7 and 8 and was positioned on top of Unit 7 C-D, could not see who the inmate was from his position but heard Officer Starling say: "Nobody is talking to you nobody is disrespecting you so you can back off." (Doc. # 20-2 at 2.)

Officer Starling claims that Plaintiff then began clenching his hands into fists and pacing back and forth, and then jumped down from his position on the concrete stump and began walking towards Officer Starling. (*Id*.) Plaintiff said to Officer Starling, "ok lets [sic] talk about this one on one" and began walking towards the "redline." (*Id*.; Doc. # 20-2.) Officer Starling

asked him to stop at the line. (*Id.*) By this time, Officer Pauli had moved to where he could see Plaintiff, and observed him step "over the red line at the front of the yard in an aggressive manner to where Officer Starling was standing." (Doc. # 20-2 at 2.) Officer Starling began to think that Plaintiff was going to try to assault him, and gave Plaintiff multiple orders to back up, which he did not heed. (Doc. # 20-1 at 2.) According to both Officer Pauli's and Officer Starling's reports, Plaintiff then ran up to him and struck him on the left jaw. (Doc. # 20-1; Doc. # 20-2.) Officer Starling swung back, and as Officer Starling was trying to place the inmate to the ground, Correctional Officer Pauli gave several verbal commands for Plaintiff to get on the ground. (*Id.*) According to both officers' reports, Plaintiff continued to fight. (*Id.*) Officer Pauli then racked the shot gun and continued to give the command to Plaintiff to stop fighting and lay on the ground. (Doc. # 20-2 at 2.) The fight then went to the ground, and Plaintiff still did not comply with orders to stop fighting and get to the ground, so Officer Pauli fired a blank round and continued giving commands to Plaintiff to stop fighting and get on the ground. (*Id.*) Plaintiff again failed to heed the commands. (Id.) Officer Pauli then fired "one live round (7 1/2 birdshot) approximately one to three yards in front of the inmate and Officer Starling attempting to skip the shot into the inmate." (*Id.*) Plaintiff then became compliant and Officer Starling placed him in restraints. (Doc. # 20-1 at 2; Doc. # 20-2 at 2.) Other officers and medical staff subsequently arrived on scene. (*Id.*)

The unusual occurrence report indicates that after the incident Plaintiff reported that he "ha[s] seizures." (Doc. # 22-1 at 2.) He reported he had a grand mal seizure for five minutes after the incident. (*Id.*) It was noted that Plaintiff had multiple bumps from the birdshot pellets on his forehead, right buttock, right thigh, left leg and left foot. (*Id.*) It was ordered he be admitted to the infirmary. (*Id.*)

Plaintiff received disciplinary charges for assault and battery, was found guilty, and received 540 days in disciplinary segregation, 867 days lost stat time and was required to pay restitution. (Doc. # 20 at 4; Doc. # 20-5; Doc. # 20-6; Doc. # 20-8.)

Defendant Pauli cites to NDOC Operational Procedure 405 which governs the use of force within NDOC facilities, and states that the firing of a warning shot and the birdshot are

types of non-deadly force because they do not carry a substantial risk of death. (Doc. # 20 at 6; Doc. # 20-7 at 3.) He maintains that consistent with Operational Procedure 405, he only used that amount of force necessary on May 29, 2012 to gain Plaintiff's compliance and maintain the safety and security of the institution. (Doc. # 20 at 7-8.) He asserts that he initially gave Plaintiff multiple verbal commands to stop fighting Officer Starling and to get to the ground, which Plaintiff did not follow. (*Id*. at 7.) He points out that Plaintiff's attack itself on Officer Starling placed Officer Starling in danger, but it also made him vulnerable to the "hundred or so inmates milling unrestrained in the yard." (*Id*.; Doc. # 20-1 at 2; Doc. # 20-2 at 2.) When Plaintiff failed to respond to Officer Pauli's verbal commands, Officer Pauli escalated his use of force to the next level by firing a blank warning shot. (*Id*.) Plaintiff ignored the warning shot and continued to fight Officer Starling. (*Id*.) Officer Pauli continued issuing verbal commands, which Plaintiff ignored; therefore, Officer Pauli escalated the use of force to the next level by "chambering a live round of 7 1/2 birdshot and firing it two to three feet away from Plaintiff in order to skip the shot into Plaintiff's body." (*Id*.) The shot was fired on the ground near Plaintiff, consistent with Operational Procedure 405. (*Id*.) After this, Plaintiff became compliant. (*Id*. at 8.)

In response to Plaintiff's allegation that he was being assaulted by Officer Starling, Officer Pauli claims that "[a]ny punches Plaintiff received were part and parcel of the physical struggle he had launched upon C/O Starling, and the resultant bruise on his head can be explained quite simply as the natural consequence of engaging in a physical fight with another person." *Id*. As to his claimed seizure, Officer Pauli contends that this was self-diagnosed and never verified by medical staff. (*Id*.)

Officer Pauli argues that he used only that amount of force necessary to gain Plaintiff's compliance; the use of force was not malicious or sadistic in order to cause harm. (*Id*.)

Finally, Officer Pauli contends that he is entitled to qualified immunity because he used the minimal amount of force necessary to regain control of Plaintiff, who was engaged in an attack on a correctional officer in an open yard filled with unrestrained inmates. (*Id*. at 9-10.) He asserts that no reasonable officer would have known that this conduct would violate the Eighth Amendment. (*Id*. at 10.)

### 2. Plaintiff's Response/Cross-Motion

Plaintiff asserts that the court should defer ruling on defendant Pauli's motion for summary judgment so that Plaintiff may conduct discovery. (Doc. # 31 at 8.) He contends that he needs: "(1) affidavits and declarations (2) photographs (3) interrogatory responses (4) depositions [sic] transcripts (5) copies of letters (6) copies of documents." (*Id*.) Plaintiff also references wanting to know why the defendants were "let go" from their employment with NDOC, and if either had any other altercations with other inmates before or after this incident. (*Id*. at 5.) He would also like to obtain all of the clothing he wore (presumably on the date of the incident) to be "submitted for review." (*Id*.)  He then requests that the court order him assistance in reviewing his medical records. (*Id*.)  He also references a motion for appointment of counsel (which he has filed at Doc. # 46, and which the court will address via separate order).

He then states that he wants to obtain declarations and affidavits from the officers at his disciplinary hearing and his cell mate at the time of the incident, who he claims heard Officer Starling come to Plaintiff's cell after the incident and ask him how his head felt. (*Id*. at 6.)

Plaintiff also seeks to obtain declarations from unspecified inmates who were on the yard that day. (*Id*. at 7.) He contends he has been housed in segregation and unable to obtain declarations or affidavits. (*Id*.)

Plaintiff requests an order for x-rays which he contends will show the locations where the pellets hit him which will prove he was on the ground at the time defendant Pauli fire the live round. (*Id*. at 7.)

Next, Plaintiff asserts that defendant Starling assaulted Plaintiff which caused him to black out and sustain a knot on his head. (*Id*.) He disputes statements that defendant Starling attributes to Plaintiff in his report made after the incident which was filed in support of defendant Pauli's motion for summary judgment. (*Id*. at 8-9; *see* report at Doc. # 20-1 at 2.)

Finally, Plaintiff contends that Officer Starling used force in a malicious and sadistic manner to cause Plaintiff harm. (*Id*. at 11.) He argues that Officer Pauli must have seen Officer Starling on top of Plaintiff "boun[cing] his head off the ground" and did not report what Officer Starling did. (*Id*. at 11-12.)

1          **3. Defendant Pauli's Reply**

2          Defendant Pauli argues that Plaintiff fails to raise a genuine dispute of material fact to

3   defeat his motion for summary judgment. (Doc. # 33 at 2-4.) First, in response to Plaintiff's

4   request for copies of x-rays that he says will confirm he was lying down at the time defendant

5   Pauli fired the live shot, defendant Pauli admits that Plaintiff was lying down; however, Plaintiff

6   was on the ground still engaging in a fight with Officer Starling and refusing to obey commands

7   to submit. (*Id*. at 3.)

8          Second, to the extent Plaintiff claims that Officer Starling "bounced Plaintiff's head on

9   the ground," defendant Pauli claims this has no bearing on his use of force which was limited to

10  skipping the birdshot off the ground to gain Plaintiff's compliance. (*Id*.) Even assuming

11  defendant Pauli saw Officer Starling engage in this contact, it does not change the fact that

12  Plaintiff was involved in an altercation with a correctional officer and refused to respond to his

13  commands to submit, rendering the institution vulnerable. (*Id*. at 4.)

14         Third, defendant Pauli contends that Plaintiff's disagreement with statements Officer

15  Starling attributed to him in his report after the incident likewise has no bearing on defendant

16  Pauli's use of force. (*Id*. at 3.)

17         Finally, as to Plaintiff's request to conduct discovery, he maintains the requested

18  discovery would have no impact on Plaintiff's claim of excessive force against defendant Pauli,

19  and Plaintiff has not properly justified his request to defer ruling on this motion while he obtains

20  discovery. (*Id*. at 4-6.)

21  **B. Plaintiff's Request to Defer Ruling on Pauli's Motion for Summary Judgment so**

22  **Plaintiff Can Conduct Discovery**

23          If a nonmovant shows by affidavit or declaration that, for specified reasons, it
            cannot present facts essential to justify its opposition, the court may:
            (1) defer considering the motion or deny it;
24          (2) allow time to obtain affidavits or declarations or to take discovery; or
25          (3) issue any other appropriate order.

26  Fed. R. Civ. P. 56(d).

27         "Under Fed. R. Civ. P. 56(f) [now 56(d)], a trial court may order a continuance on a

28  motion for summary judgment if the party requesting a continuance submits affidavits showing

that, without Rule 56 assistance, it cannot present facts necessary to justify its claims. The requesting party must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home and Finance Center, Inc. v. Federal Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (citing *Cal. On Behalf of Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998)). "Failure to comply with these requirements 'is a proper ground for denying discovery and proceeding to summary judgment.'" *Id.* (citation omitted); *see also Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1091 n. 5 (9th Cir. 2009).

Plaintiff has not met his burden of showing that the court should defer ruling on this motion for summary judgment because Plaintiff cannot present facts essential to justify his opposition. First, Plaintiff contends that he needs to obtain affidavits and declarations to support his opposition. He references his need to obtain declarations from officers who were at his disciplinary hearing; however, the statements of officers at his disciplinary hearing would have no impact on the conduct of defendant Pauli when he fired the live shot that resulted in the pellets striking Plaintiff. Plaintiff also states that he would like to obtain an affidavit from his cellmate at the time who heard a statement that Officer Starling made *after* the incident, asking about Plaintiff's head asserted head injury. Again, this statement has no bearing on defendant Pauli's alleged use of excessive force. Finally, Plaintiff indicates a need to obtain declarations from unspecified inmates on the yard that day; however, he fails to state what these inmates say and how it would assist his opposition. He gives no indication that these inmates would give testimony to rebut defendant Pauli's assertion that he acted reasonably that day.

Plaintiff makes vague reference to his need to obtain photographs, letters and documents, but in no way specifies what facts he hopes to elicit from these materials or how they might impact his case. He indicates that he would like to propound interrogatories and conduct depositions but does not identify to whom or what he might ask. Nor does he explain how these tools would bolster his argument in opposition to defendant Pauli's motion for summary judgment.

1    Next, Plaintiff states that he wants to know why each of the defendants was "let go" from

2    their employment at NDOC; however, this has no discernable bearing on the action of defendant

3    Pauli on May 29, 2012.

4    Plaintiff then states that he would like the clothing he was wearing (presumably on

5    May 29, 2012) produced, but gives no indication of how this is at all relevant to his claim against

6    defendant Pauli.

7    Finally, he seeks assistance reviewing his medical records. Defendant Pauli has produced

8    only two pages of medical records that relate to the incident, the unusual occurrence report and

9    progress notes from that date. The court has reviewed the records and cannot conclude that

10   assistance in reviewing them is necessary. Moreover, the unusual occurrence report documents

11   Plaintiff's subjective complaints that day.

12   In sum, Plaintiff has failed to convince the court that it is necessary to defer ruling on

13   defendant Pauli's motion while Plaintiff engages in discovery.  Therefore, his request for such a

14   deferral under Federal Rule of Civil Procedure 56(d) should be denied. Plaintiff is advised that a

15   scheduling order has been entered in this action on May 20, 2014, giving the parties until

16   August 18, 2014 to conduct discovery. (Doc. # 41.) Should Plaintiff wish to propound discovery

17   relative to defendant Starling, he should not delay in doing so. With this advisement, any request

18   to extend the discovery deadline will not be viewed favorably in the absence of good cause.

19   The court will now turn to the merits of the motions for summary judgment.

20   **C. Eighth Amendment Excessive Force Legal Standard**

21   The Eighth Amendment prohibits the imposition of cruel and unusual punishment. U.S.

22   Const. amend VIII. It "embodies broad and idealistic concepts of dignity, civilized standards,

23   humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal

24   quotations omitted). The "unnecessary and wanton infliction of pain...constitutes cruel and

25   unusual punishment forbidden by the Eighth Amendment." *Id.* (quoting *Whitley v. Albers*, 475

26   U.S. 312, 319 (1986)).

27   "[W]henever prison officials stand accused of using excessive physical force in violation

28   of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-

1  faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

2  *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see also Whitley*, 475 U.S. at 320-2; *Watts v.*

3  *McKinney*, 394 F.3d 710, 711 (9th Cir. 2005); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th

4  Cir. 2003). "When prison officials maliciously and sadistically use force to cause harm,

5  contemporary standards of decency are always violated." *Hudson*, 503 U.S. at 9 (citing *Whitley*,

6  475 U.S. at 327.)

7      In determining whether the use of force is excessive, courts are instructed to examine "the

8  extent of the injury suffered by the inmate;" "the need for application of force, the relationship

9  between that need and the amount of force used, the threat 'reasonably perceived by the

10  responsible officials,' and 'any efforts made to temper the severity of the forceful response.'"

11  *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

12      An inmate need not establish serious injury; however, the lack of serious injury is

13  relevant to the Eighth Amendment inquiry. *See Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010).

14  "The extent of injury may also provide some indication of the amount of force applied." *Id*. That

15  being said, not "every malevolent touch by a prison guard gives rise to a federal cause of

16  action...The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily

17  excludes from constitutional recognition *de minimis* uses of physical force, provided that the use

18  of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10

19  (quoting *Whitley*, 475 U.S. at 327); *see also Wilkins*, 130 S.Ct. at 1178 (citation omitted) ("An

20  inmate who complains of a 'push or shove' that causes no discernable injury almost certainly fails

21  to state a valid excessive force claim"). "Injury and force, however, are only imperfectly

22  correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by

23  guards does not lose his ability to pursue an excessive force claim merely because he has the

24  good fortune to escape without serious injury." *Wilkins*, 130 S.Ct. at 1178-79. If the nature of the

25  injuries is more than *de minimis*, but still "relatively modest," the inmate's damages will likely be

26  limited. *See id*. at 1180.

27      Courts must be deferential when reviewing the necessity of using force. *See Whitley*, 475

28  U.S. at 321-22; *see also Norwood v. Vance*, 591 F.3d 1062, 1067 (9th Cir. 2009), *cert denied*,

131 S.Ct. 1465 (Feb. 22, 2011) (citing *Whitley*, 475 U.S. at 322) ("Prison officials are entitled to deference whether a prisoner challenges excessive force or conditions of confinement").

**D. Analysis**

Defendant Pauli has produced evidence that on May 29, 2012, his use of force was employed in a good-faith effort restore discipline and gain Plaintiff's compliance with commands to cease engaging in an altercation with Officer Starling, and not maliciously and sadistically to cause harm. He details how the incident began, that he perceived Plaintiff to initiate an altercation with Officer Starling, but Plaintiff ignored multiple verbal commands as well as a warning shot intended to curb his conduct. When the incident continued to escalate and Plaintiff failed to heed his warnings, defendant Pauli escalated his use of force, consistent with operational procedures at NDOC, by firing a live birdshot into the ground designed to skip into Plaintiff's body so that he would cease fighting with Officer Starling. Thus, he has sufficiently detailed the need for application of force, the relationship between the need to use force and the amount of force used, and his efforts made to temper the severity of the forceful response. He likewise describes the threat he reasonably perceived not only to Officer Starling but to the institution given that the altercation was occurring among a large ground of unrestrained inmates. Finally, he provides evidence that he aimed the birdshot to skip off the ground into Plaintiff which did result in pellets coming into contact with Plaintiff's body but explains that this was a reasonable action given Plaintiff's failure to respond to verbal commands or his warning shot.

Plaintiff discusses various facts in his response to defendant Pauli's motion, claiming they raise a genuine dispute of material fact; however, none of them are material to his claim against defendant Pauli. Instead, they all relate to his claim against Officer Starling, who has not yet filed a dispositive motion. For example, he contends that his x-rays will show where the pellets hit him which will prove he was on the ground at the time defendant Pauli fired the live round. Defendant Pauli does not dispute Plaintiff was on the ground when he fired the shot. Plaintiff does not dispute defendant Pauli's statement that while on the ground, Plaintiff was still engaging Officer Starling in the altercation and refusing to heed commands to stop. Plaintiff also claims that defendant Starling was assaulting him; however, even if true, Plaintiff does not dispute that

1  he initiated the altercation, ignored Officer Pauli's commands to cease fighting, and continued to

2  do so while on the ground with Officer Starling, thereby justifying Officer Pauli's use of force.

3  While Plaintiff disputes statements attributed to him in Officer Starling's report, none of these

4  statements have an impact on Officer Pauli's use of force.

5      In sum, Plaintiff has not raised a genuine dispute of material fact so as to defeat

6  defendant Pauli's motion for summary judgment. Nor has he presented evidence on his own

7  behalf that establishes the absence of a genuine dispute of material fact in support of his cross-

8  motion for summary judgment. Therefore, the court recommends that defendant Pauli's motion

9  (Doc. # 20) be granted, and Plaintiff's cross-motion (Doc. # 31) be denied.

10                          **IV. RECOMMENDATION**

11      **IT IS HEREBY RECOMMENDED** that the District Judge enter an order:

12  (1) **DENYING** Plaintiff's request to defer considering defendant Pauli's motion for summary

13  judgment under Federal Rule of Civil Procedure 56(d);

14  (2) **GRANTING** defendant Pauli's motion for summary judgment (Doc. # 20); and

15  (3) **DENYING** Plaintiff's cross-motion for summary judgment (Doc. # 31).

16  The parties should be aware of the following:

17      1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local

18  Rules of Practice, specific written objections to this Report and Recommendation within fourteen

19  days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and

20  Recommendation" and should be accompanied by points and authorities for consideration by the

21  District Court.

22      2. That this Report and Recommendation is not an appealable order and that any notice of

23  appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed

24  until entry of the District Court's judgment.

25

26  DATED: June 23, 2014.

27                          _____
                            WILLIAM G. COBB
28                          UNITED STATES MAGISTRATE JUDGE