UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LEO DAVID HANSON,<br><br>                      Plaintiff,<br><br>v.<br><br>PAULI, et al.,<br><br>                      Defendant. | Case No. 3:13-cv-00397-MMD-WGC<br><br>ORDER |

Before the Court is the Report and Recommendation of United States Magistrate Judge William G. Cobb (dkt. no. 49) ("R&R") regarding Defendant Kevin Pauli's motion for summary judgment (dkt. no. 20) and Plaintiff's cross-motion seeking a continuance under Rule 56(d) (dkt. no. 31). Plaintiff filed an objection to the R&R and Defendant has filed a response. (Dkt. nos. 50, 51.)

**I.   BACKGROUND**

Following screening of the complaint pursuant to 28 U.S.C. § 1915A, this action was permitted to proceed against correctional officers Kevin Pauli ("Pauli") and Jack Starling ("Starling") on Plaintiff's claim that he was subjected to excessive use of force in violation of his Eighth Amendment rights. (Dkt. no. 3.) The incident giving rise to this claim occurred on May 29, 2012, when Plaintiff initiated a verbal and physical confrontation with Starling that led to Pauli firing a blank round followed by a live round.

On May 29, 2012, Starling escorted thirteen (13) inmates into the 7/8 quad to show them where they would be housed. (Dkt. no. 20-1.) There were unrestrained inmates, including Plaintiff, on the 7/8 quad yard. (*Id.*) As Starling began to read out

inmates' names and assigned locations, other inmates began yelling out to the inmates moving into the quad. (*Id.*) Starling stopped and yelled to these inmates to reduce their noise level when Plaintiff told him to shut up and quit disrespecting them. (*Id.*) Starling told Plaintiff he was not addressing him and heard another inmate attempt to calm Plaintiff. (*Id.*) However, Plaintiff started talking and again said that Starling was disrespecting him. (*Id.*) Starling again said he was not talking to Plaintiff. (*Id.*) Starling noticed that Plaintiff had clenched his hands into fists, began pacing back and forth and then jumped from his position on the concrete stump and started to walk towards the "redline." (*Id.*) Starling directed Plaintiff multiple times to stop at the line but Plaintiff ran to his side and struck him on the jaw. (*Id.*)

Pauli was the assigned "gunrail" officer for units 7 and 8 and was positioned on top of Unit 7 C-D. (Dkt no. 20-2.) Pauli heard Starling's response to Plaintiff — that Starling was not addressing Plaintiff and was not disrespecting Plaintiff. (*Id.*) From where he was positioned, Pauli was not able to see or hear Plaintiff so Pauli moved to the bridge over the entrance of the yard in order to better observe Plaintiff. (*Id.*) Pauli observed Plaintiff cross "over the red line at the front of the yard in an aggressive manner to where Officer Starling was standing." (*Id.*) Pauli saw Plaintiff hit Starling. (*Id.*)

The parties' accounts of what happened next vary.[1] According to Starling, after Plaintiff struck him, Starling "swung back." (Dkt. no. 20-1.) As Starling was trying to place Plaintiff on the ground, Pauli fired a warning shot but Plaintiff continued trying to fight and Pauli fired a live round. (*Id.*) According to Pauli, he gave repeated orders for Plaintiff to get on the ground and stop fighting. (Dkt. no. 20-2.) Plaintiff did not comply and continued to fight Starling. (*Id.*) Pauli racked the shot gun and continued to order Plaintiff to stop fighting and to lie on the ground. (*Id.*) "The fight then went to the ground but [Plaintiff] did not comply with the order to stop fighting with Officer Starling." (*Id.*)

---

[1] The Complaint and Plaintiff's opposition brief focus on events that transpired after Plaintiff was on the ground. Plaintiff's pleading and opposition brief are silent as to whether Plaintiff initiated the confrontation and struck Starling.

2

Pauli then fired a blank round as he continued to give his orders to Plaintiff to stop fighting and to lie on the ground. (*Id.*) When Plaintiff refused and continued to hit Starling, Pauli "fired one live round (7 ½ bird shot) approximately one to three yards in front of [Plaintiff and Starling] attempting to skip the shot into [Plaintiff]." (*Id.*) Plaintiff stopped fighting and Starling restrained him. (*Id.*) Other officers then arrived to help control the situation in the yard. (*Id.*)

According to Plaintiff, he was complying with orders to lie down on the ground on his stomach, when without justification, defendant Starling "reached down, bounced my head on the ground" and "began punching me in the head and around my neck area." (Dkt. no. 4 at 4-5; dkt. no. 31 at 47.) Plaintiff alleges that this conduct was unexpected and he was trying his best "to defend" himself from being beaten. (Dkt. no. 31 at 47.) Plaintiff alleges that Pauli then shot him with a 12-gauge shotgun, striking him in the bottom of his left foot and back of his right leg. (*Id.*)

Defendant Pauli moved for summary judgment. The Magistrate Judge recommended granting summary judgment, finding there is no genuine dispute of material fact for trial. Plaintiff objects to the Magistrate Judge's recommendation.

## II.  DISCUSSION

### A.  Legal Standard

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1). As Plaintiff has objected to the Magistrate Judge's R&R, the Court conducts a *de novo* review.

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with

3

the affidavits, if any, show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (*citing* Fed. R. Civ. P. 56(c)). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. Although the parties may submit evidence in an inadmissible form, the Court may only consider evidence which might be admissible at trial in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c).

**B.     Analysis**

    **1.     Pauli's Merits Argument**

When a prison official stands accused of using excessive physical force in violation of the cruel and unusual punishment clause of the Eighth Amendment, the question turns on whether force was applied in a good-faith effort to maintain or restore

4

discipline, or maliciously and sadistically for the purpose of causing harm. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (*citing Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). In determining whether the use of force was wanton and unnecessary, it is proper to consider factors such as the need for application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 7. Courts must be deferential when reviewing the necessity of force. *Norwood v. Vance*, 591 F.3d 1062 1066-67 (9th Cir. 2010), *cert denied* 131 S. Ct. 1465. However, whether the use of force was unconstitutionally excessive usually involves an issue of fact. *See, e.g., Lolli v. Cnty. of Orange*, 351 F.3d 410, 415-16 (9th Cir. 2003) (citations omitted) (in an excessive force case brought by a pretrial detainee under the Fourth Amendment, the court stated, "summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly").

Pauli argues that his use of force was consistent with NDOC's Operational Procedure 405, was commensurate with Plaintiff's conduct and was applied in a good faith effort to maintain the safety and security of staff members, other inmates and the institution as a whole. In advancing this argument, Pauli relies on his account of the facts recited above. Pauli's description of the incident shows that Plaintiff refused to stop hitting Starling and to lie down on the ground despite repeated orders from Pauli and despite a blank warning shot from Pauli. Pauli fired a live round only after Plaintiff refused to comply with Pauli's repeated commands. The Court agrees with Pauli that accepting his account of the facts, Pauli's use of force was not excessive.

However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Anderson*, 477 U.S. at 255. Moreover, in evaluating summary judgment, the Court must view all facts and draw all inferences in the light most favorable to Plaintiff as the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). Plaintiff's account as established in his Complaint and his affidavit

5

1  offered in opposition to summary judgment (dkt. no. 4 at 4-5; dkt. no. 31 at 47) shows
2  that Plaintiff was lying on the ground, on his stomach when Starling "began punching
3  [him] in the head, neck and ear area" and he was trying to "defend" himself when Pauli
4  shot him. Plaintiff argues he was already on the ground and restrained by Starling, thus
5  contradicting Pauli's claim that he fired a blank and then live shot only after Plaintiff
6  failed to follow repeated orders to stop fighting and to lie on the ground. Plaintiff's
7  statement that he "was trying the best [he] could to defend [himself] from thereby
8  beaten" (dkt. no. 31 at 47) may lead a reasonable juror to conclude that he was fighting
9  Starling as Pauli claims to have observed. However, viewing the statement and drawing
10 all inferences in the light most favorable to Plaintiff, this statement may also be
11 construed as Plaintiff trying to be compliant while Sterling was punching him.
12 Reasonable minds may find that Pauli's firing of a live round under the circumstances
13 alleged by Plaintiff may constitute excessive use of force.

14 The facts in this case present an admittedly close call as to whether Officer Pauli's use of force was applied in a good faith attempt to protect Starling and maintain order in the yard after Plaintiff initiated a physical altercation with Starling.  However, the facts also present a classic "he said, he said" debate as to whether Plaintiff was already restrained when Pauli fired the live round.  A reasonable jury may find that Pauli's use of force was excessive based on Plaintiff's account of the facts. Thus, resolution of this fact-intensive dispute as to what transpired during the struggle on the ground between Plaintiff and Starling must be left to the jury.

### 2. Pauli's Claim of Qualified Immunity

Pauli also seeks summary judgment on his qualified immunity affirmative defense. Where a plaintiff has stated a valid cause of action under § 1983, government officials sued in their individual capacities may raise the affirmative defense of qualified or absolute immunity. *See Spoklie v. Montana*, 411 F.3d 1051, 1060 (9th Cir. 2005). The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This immunity is granted broadly and "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Moran v. Washington*, 147 F.3d 839, 844 (9th Cir. 1998) (*quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Moreover, "the doctrine of qualified immunity dictates that courts will not substitute their judgment for the officers' own in evaluating the officers' reactions to novel and dangerous situations." *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1180 (9th Cir. 2013). "A [g]overnment official's conduct violates clearly established law when, at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd,* ––– U.S. –––, 131 S. Ct. 2074, 2083 (2011) (quotation marks and citation omitted).

Pauli focuses his argument on the second prong of the qualified immunity analysis — what a "reasonable official would have understood."[2] Pauli contends that the force he used was commensurate with Plaintiff's physical attack of a correctional officer to protect the officer and maintain control in an open yard where "nearly one hundred inmates roamed unrestrained."[3] (Dkt. no. 20 at 10.) He then argues that a reasonable officer would have understood that complying with NDOC's Operational Procedures and applying escalated non-deadly force to gain control of an inmate who was attacking a correctional officer would not have violated Plaintiff's right to be free from excessive force. This argument, like Pauli's argument as to the merits, is similarly premised on the Court's acceptance of Pauli's account of the incident. However, the Court must construe the facts in light most favorable to Plaintiff even when evaluating whether Pauli is entitled to qualified immunity. *Johnson*, 724 F.3d at 1180. The Court cannot conclude

---

[2] Pauli does not argue that the first prong — the protections afforded inmates from excessive force under the Eighth Amendment — has not been established in this case.

[3] The statement as to the number of inmates in the yard is not supported by the evidence offered in support of Pauli's Motion.

that a reasonable officer would have fired a live round in the circumstances described by Plaintiff where he was lying on the ground and being attacked by Starling and therefore not presenting a threat to Starling's safety. Pauli cannot receive the benefit of qualified immunity where the facts here are disputed and are not susceptible to a reasonable conclusion.

### III. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of Pauli's Motion.

The Court rejects the Magistrate Judge's R&R (dkt. no. 49). It is ordered that Defendant Kevin Pauli's motion for summary judgment (dkt. no. 20) is denied. It is further ordered that Plaintiff's cross-motion (dkt. no 31) asking the Court to defer ruling on Pauli's Motion until after additional discovery is denied as moot.

DATED THIS 16th day of September 2014.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE