1
2
3
4                     UNITED STATES DISTRICT COURT
5                         DISTRICT OF NEVADA
6   LEO DAVID HANSON,                    3:13-cv-00397-MMD-WGC
7                          Plaintiff,    **REPORT & RECOMMENDATION OF**
                                         **U.S. MAGISTRATE JUDGE**
8          v.
                                         Re: Doc. # 53-Defendant Starling's Motion
9   PAULI, et. al.,                      for Summary Judgment
10                        Defendants.
11         This Report and Recommendation is made to the Honorable Miranda M. Du, United
12  States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to
13  28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4. Before the court is
14  defendant Jack Starling's (Starling) Motion for Summary Judgment (Doc. # 53).[1] Plaintiff Leo
15  David Hanson (Plaintiff) filed an opposition (Doc. # 68) and Cross-Motion for Summary
16  Judgment (Doc. # 69).[2] Starling filed a reply and errata to his reply (Docs. # 70, 73).[3]
17         After a thorough review, the court recommends that both Starling's motion and Plaintiff's
18  cross-motion be denied.
19                              **I. BACKGROUND**
20         Plaintiff, a pro se litigant, is a prisoner in the custody of the Nevada Department of
21  Corrections (NDOC), and brings this action pursuant to 42 U.S.C. § 1983. (Pl.'s Compl.,
22  Doc. # 4.) The events giving rise to this action took place while Plaintiff was housed at High
23  Desert State Prison (HDSP). (*Id.*)
24
25  _____

26     [1] Refers to court's docket number.

27     [2] These two documents are identical.

28     [3] The errata seeks to clarify that the document is both a reply in support of Starling's motion and an
    opposition to Plaintiff's cross-motion. The court will treat it as such.

1        On screening, the court determined Plaintiff could proceed with his claim of excessive

2   force under the Eighth Amendment against defendants Starling and Kevin Pauli (Pauli).

3   (Screening Order, Doc. # 3.) Plaintiff alleges that on May 29, 2013, he was complying with

4   orders to lie down on the ground on his stomach, when without justification, Starling "bounced

5   [his] head on the ground" and "began punching [him] in the head and around [his] neck area."

6   (Doc. # 4 at 4-5.) He contends that Pauli then shot him with a 12-gauge shotgun, striking him in

7   the bottom of his left foot and the back of his right leg. (*Id*.)

8        Pauli previously filed a motion for summary judgment (Doc. # 20), arguing that his use

9   of force was justified and reasonable, asserting that Plaintiff had attacked defendant Starling and

10   ignored repeated commands to stop fighting as well as a warning shot before Pauli, who was

11   manning the "gun rail" above where Starling and Plaintiff were located, fired a live round with

12   pellets in Plaintiff's direction to gain his compliance. (*Id*.) Plaintiff opposed that motion, and

13   filed a cross-motion for summary judgment. (Doc. # 31.) The undersigned issued a report and

14   recommendation on these motions on June 23, 2014, recommending that Pauli's motion be

15   granted and that Plaintiff's cross-motion be denied. (Doc. # 49.) The undersigned concluded that

16   Pauli produced evidence that his use of force was employed in a good-faith effort to restore

17   discipline and gain Plaintiff's compliance with commands to cease engaging in an altercation

18   with Starling, and not maliciously and sadistically to cause harm. (*Id*. at 13.) The undersigned

19   likewise found that Plaintiff's opposition did set forth facts sufficient to create a genuine dispute

20   of material fact with respect to his claim against Pauli, and instead focused on Starling's conduct.

21   (*Id*. at 13-14.)

22        On September 16, 2014, District Judge Miranda M. Du issued an order rejecting the

23   undersigned's report and recommendation, denied defendant Pauli's motion for summary

24   judgment, and denied Plaintiff's cross-motion as moot. (Doc. # 59.) Judge Du agreed that,

25   accepting Pauli's version of events, his use of force was not excessive under the Eighth

26   Amendment. (*Id*. at 5.) Judge Du found, however, that Plaintiff asserted that he was lying on the

27   ground when Starling began punching him and was trying to defend himself when Pauli shot

28   him, in contradiction to Pauli's claim that he fired the warning and then live round only after

1   Plaintiff failed to follow repeated orders to stop fighting and lie on the ground. (*Id*. at 6.) Judge

2   Du acknowledged that the facts presented a "close call" as to whether Pauli's use of force was

3   excessive, but determined that the resolution of the facts was the province of the fact finder. (*Id*.)

4          On September 3, 2014, Starling filed his Motion for Summary Judgment. (Doc. # 53.)

5   Starling argues that on May 29, 2012, Plaintiff launched an unprovoked physical attack on him

6   which created a serious threat to Starling's safety, rejected Starling's attempts to de-escalate the

7   situation, and punched Starling in the face. (Doc. # 53 at 3.) Plaintiff ignored repeated verbal

8   commands from Pauli, and only stopped fighting after he was hit by the live round fired by Pauli.

9   (*Id*.)

10         Plaintiff, on the other hand, argues that he was lying down on the ground, complying with

11  the orders of Starling and Pauli when Starling continued to punch him and "bounce his head on

12  the ground." (Docs. # 68/69.)

13                              **II. SUMMARY JUDGMENT STANDARD**

14         "The purpose of summary judgment is to avoid unnecessary trials when there is no

15  dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

16  F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary

17  judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*,

18  525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

19  (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine

20  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

21  Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at

22  issue, summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

23  250 (1986).

24         A party asserting that a fact cannot be or is genuinely disputed must support the
           assertion by:

25         (A) citing to particular parts of materials in the record, including depositions,
           documents, electronically stored information, affidavits or declarations,

26         stipulations (including those made for purposes of the motion only), admissions,
           interrogatory answers, or other materials; or

27         (B) showing that the materials cited do not establish the absence or presence of a
           genuine dispute, or that an adverse party cannot produce admissible evidence to

28         support the fact.

1    Fed. R. Civ. P. 56(c)(1)(A), (B).

2           If a party relies on an affidavit or declaration to support or oppose a motion, it "must be

3    made on personal knowledge, set out facts that would be admissible in evidence, and show that

4    the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

5           In evaluating whether or not summary judgment is appropriate, three steps are necessary:

6    (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as

7    to a material fact; and (3) considering the evidence in light of the appropriate standard of proof.

8    *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect

9    the outcome of the suit under the governing law will properly preclude the entry of summary

10   judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* at 248.

11          In deciding a motion for summary judgment, the court applies a burden-shifting analysis.

12   "When the party moving for summary judgment would bear the burden of proof at trial, 'it must

13   come forward with evidence which would entitle it to a directed verdict if the evidence went

14   uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing

15   the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*

16   *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations

17   omitted). In contrast, when the nonmoving party bears the burden of proving the claim or

18   defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

19   an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party

20   failed to make a showing sufficient to establish an element essential to that party's case on which

21   that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-

22   25 (1986).

23          If the moving party satisfies its initial burden, the burden shifts to the opposing party to

24   establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*

25   *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of

26   material fact, the opposing party need not establish a genuine dispute of material fact

27   conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a

28   jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.,*

*Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go  beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

> That being said,
> [i]f a party fails to properly support an assertion of fact or fails to properly address
> another party's assertion of fact as required by Rule 56(c), the court may: (1) give
> an opportunity to properly support or address the fact; (2) consider the fact
> undisputed for purposes of the motion; (3) grant summary judgment if the motion
> and supporting materials—including the facts considered undisputed—show that
> the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

      At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

### III. DISCUSSION

**A. Eighth Amendment Excessive Force**

      The Eighth Amendment prohibits the imposition of cruel and unusual punishment.  U.S. Const.  amend.  VIII. It "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v.  Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotations omitted). The "unnecessary and wanton infliction of pain...constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Id*. (quoting *Whitley v.  Albers*, 475 U.S. 312, 319 (1986)).

1     "[W]henever prison officials stand accused of using excessive physical force in violation

2 of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-

3 faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

4 *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see also Whitley*, 475 U.S. at 320-21; *Watts v.*

5 *McKinney*, 394 F.3d 710, 711 (9th Cir. 2005); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th

6 Cir. 2003). "When prison officials maliciously and sadistically use force to cause harm,

7 contemporary standards of decency are always violated." *Hudson*, 503 U.S. at 9 (citing *Whitley*,

8 475 U.S. at 327).

9     In determining whether the use of force is excessive, courts are instructed to examine

10 "the extent of the injury suffered by an inmate[;]" "the need for application of force, the

11 relationship between that need and the amount of force used, the threat 'reasonably perceived by

12 the responsible officials,' and 'any efforts made to temper the severity of the forceful response.'"

13 *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

14     An inmate need not establish serious injury; however, the lack of serious injury is

15 relevant to the Eighth Amendment inquiry. *See Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010).

16 "The extent of injury may also provide some indication of the amount of force applied." *Id*.

17 **B. Analysis**

18     Starling's version of events is virtually identical to the version asserted by Pauli in

19 support of his motion for summary judgment: On May 29, 2012, at approximately 1:45 p.m.,

20 Starling was escorting 13 newly-admitted inmates to the custody of NDOC from the 5/6 quad

21 yard into the 7/8 quad yard. (*Id*.) Starling had no weapons on him at that time, and there were

22 many other unrestrained inmates in the 7/8 quad. (*Id*.) The other inmates in the 7/8 quad began

23 calling out to the new inmates Starling was escorting, and Starling asked them to keep it down

24 until he finished giving out their housing assignments. (*Id*.) He contends that Plaintiff initiated a

25 verbal confrontation with Starling, yelling out that he felt Starling was disrespecting him. (*Id*.)

26 Starling responded that he was not talking to Plaintiff, but Plaintiff continued to speak

27 aggressively toward Starling. (*Id*. at 4.) Another inmate began to try and calm Plaintiff down, but

28 Plaintiff jumped down from the short cement wall on which he was standing and began

1   clenching and unclenching his fists. (*Id*.) Plaintiff began walking toward Starling with clenched

2   fists and crossed the red line in front of Starling, forcing Starling to turn his back to the inmates

3   with whom Plaintiff had been standing. (*Id*.)

4        Starling asserts that he issued several verbal commands for Plaintiff to back up, which

5   Plaintiff ignored. (*Id*.) Plaintiff then hit Starling in the face. (*Id*.) Pauli was assigned to the 7/8

6   quad "gun rail" and had a view of the incident, and when he saw Plaintiff hit Starling in the face

7   he issued several verbal commands to Plaintiff to stop fighting. (*Id*.) Plaintiff ignored these

8   commands and Plaintiff and Starling then fell to the ground. (*Id*.) Pauli issued additional verbal

9   commands, which Plaintiff did not heed. (*Id*.) Pauli fired a blank round warning shot, but

10   Plaintiff still refused to stop fighting. (*Id*.) Pauli issued several more verbal commands, which

11   Plaintiff ignored and Pauli fired a live round of 7 1/2 birdshot three yards in front of Plaintiff in

12   an attempt to skip the live round into him. (*Id*.) Several rounds struck Plaintiff and he stopped

13   fighting. (*Id*.) Plaintiff was then restrained. (*Id*.)

14        Starling disputes that he "bounced Plaintiff's head on the ground." (*Id*.) Instead, he feared

15   for his safety with all of the unrestrained inmates around him and headed toward the exit. (*Id*. at

16   5.) He radioed for backup and medical assistance. (*Id*.) He asserts that Officer Menendez arrived

17   and Plaintiff began to have a medical episode involving convulsions where he banged his head

18   on the ground "about five times before SC/O Menendez positioned his left hand under Plaintiff's

19   head to protect it." (*Id*.) Plaintiff was transferred to the infirmary. (*Id*.) The infirmary records

20   indicate that Plaintiff had a bump on his right forehead, multiple birdshot wounds, and

21   complained of experiencing a seizure. (*Id*.) Plaintiff was admitted to the infirmary and was

22   released ten days later. (*Id*.) He was charged and found guilty of assault and battery and received

23   540 days in disciplinary segregation, a loss of 867 days stat time and is required to pay

24   restitution. (*Id*.)

25        Starling contends that he used hands-on force against Plaintiff only after he refused to

26   comply with verbal commands and Plaintiff initiated the incident by punching him in the face.

27   (*Id*. at 8.) He only used force to gain compliance of Plaintiff. (*Id*.) He further asserts that

28   Plaintiff's injuries were relatively minor, and only the lump on his head is arguably attributable

1    to Starling, with the other injuries being inflicted as a result of Pauli's firing the live round. (*Id.*

2    at 10.) He argues that the need to use force was great, given that Starling was in a quad with over

3    100 unrestrained inmates. (*Id.*) He maintains that he only used force after he tried to de-escalate

4    the situation to no avail, and gave Plaintiff various verbal commands which Plaintiff failed to

5    heed. (*Id.*) Again, he disputes that he "bounced Plaintiff's head on the ground." (*Id.*) He asserts

6    that the lump on Plaintiff's head was either a result of Starling's attempts to defend himself or

7    Plaintiff's medical episode following the incident. (*Id.* at 10-11.)

8          According to Plaintiff, he was on the yard on May 29, 2012, when Starling came with the

9    newly-admitted inmates when Starling began yelling at the other inmates on the yard to be quiet

10   and move back. (Docs. # 68/69 at 2-3.) Plaintiff concedes he asked Starling to "respect" the

11   "veteran" inmates, to which Starling responded: "Who said that?" (*Id.* at 3.) Plaintiff identified

12   himself, and Plaintiff reiterated that he thought Starling was being disrespectful to the inmates.

13   (*Id.*) Starling told Plaintiff that Plaintiff could speak with him "one-on-one." (*Id.*) Plaintiff

14   contends that Starling then began walking toward Plaintiff, and an altercation ensued between

15   Plaintiff and Starling. (*Id.*) He contends that he when Pauli fired the first warning shot, he began

16   to lie face down on the ground, and Starling continued to punch him, and then "bounced [his]

17   head off the ground" and "punch[ed] him on the right side of his head, neck and ear,

18   perf[o]rating the right ear." (*Id.*) He maintains that at that time he was not fighting Starling, nor

19   could he have been, as he was lying on the ground, face down, trying to keep Starling from

20   hitting him. (*Id.*, 9, 12-13) Plaintiff claims that the knot on his head was a result of Starling

21   "bouncing his head off the ground." (*Id.*)

22         In his reply, Starling argues that Plaintiff does not raise a genuine issue of material fact so

23   as to defeat Starling's motion for summary judgment by supporting his version of events with

24   only his own affidavit. (Doc. # 70 at 2.) Starling concedes that Plaintiff was eventually lying on

25   the ground, but claims that Plaintiff was fighting while he was on the ground, not lying down

26   complying with orders. (*Id.* at 3.)

27         Plaintiff does not address whether or not he in fact instigated the incident; nevertheless,

28   the court finds that a genuine dispute of material fact exists as to whether Starling used excessive

1   force. Starling maintains that he only used force necessary to gain Plaintiff's compliance and

2   never "bounced Plaintiff's head on the ground." Plaintiff, on the other hand, asserts that once

3   Pauli fired the warning shot, he was lying face down on the ground and complying with Starling

4   and Pauli's commands, but Starling continued to punch him and "bounced his head on the

5   ground" resulting in injury.

6          While Starling takes the position that Plaintiff's injury was superficial, Plaintiff contends

7   the altercation resulted in a knot on his head. While the Eighth Amendment "necessarily

8   excludes from constitutional recognition *de minimis* uses of physical force," Hudson, 503 U.S. at

9   9-10 (citation omitted) "[i]njury and force, however, are only imperfectly correlated, and it is the

10  latter that ultimately counts." *Wilkins,* 130 S.Ct. at 1178-79. "An inmate who is gratuitously

11  beaten by guards does not lose his ability to pursue an excessive force claim merely because he

12  has the good fortune to escape without serious injury." *Id.* The seriousness of Plaintiff's injury is

13  in dispute.

14         Genuine disputes of material facts exist as to whether Starling utilized force in an effort

15  to gain Plaintiff's compliance, or in a malicious and sadistic manner in order to cause harm, and

16  as to the seriousness of Plaintiff's injuries. It is the province of the fact finder to determine whose

17  version of events to believe. Therefore, both Plaintiff's and Starling's motions for summary

18  judgment should be denied. With respect to the knot Plaintiff suffered on his head, if it is

19  established that the nature of the injuries is more than *de minimis,* but still "relatively modest,"

20  the inmate's damages will likely be limited. *Id.* at 1180.

21         The court's determination does not change simply because Plaintiff's position is

22  supported only by his own, "self-serving" affidavit. "[D]eclarations are often self-serving, and

23  this is properly so because the party submitting it would use the declaration to support his or her

24  position." *Nigro v. Sears, Roebuck and Co.*, --- F.3d---, 2015 WL 1591368, at * 2 (9th Cir.

25  Apr. 10, 2015) (citing *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007) (holding that district

26  court erred in disregarding declarations as "uncorroborated and self-serving"))."The source of the

27  evidence may have some bearing on its credibility, and thus on the weight it may be given by a

28  trier of fact. But that evidence is to a degree self-serving is not a basis for the district court to

1  disregard the evidence at the summary judgment stage." *Id*. (citing 10A Charles Wright & Arthur

2  R. Miller, *Federal Practice & Procedure* § 2727 (3d ed. 2011)).

3       Finally, the court notes that Plaintiff has requested x-rays to demonstrate the location of

4  the pellets that hit his body in able to prove he was on the ground. As Starling points out, it is not

5  contested that Plaintiff was on the ground; therefore, to the extent Plaintiff moves for an order

6  that x-rays be provided, that request should be denied.

7  **C. Qualified Immunity**

8       Starling argues he is entitled to qualified immunity. (Doc. # 53 at 11-12.) He contends he

9  should receive qualified immunity because he only used the minimum amount of force necessary

10 to gain control of Plaintiff who was attacking him in an open yard with 100 unrestrained inmates,

11 and only used force after verbal attempts to de-escalate and secure compliance had failed. (*Id*. at

12 12.)

13      "Qualified immunity shields federal and state officials from money damages unless a

14 plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and

15 (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-

16 Kidd*, 131 S.Ct.  2074, 2080 (2011) (quoting *Harlow v.  Fitzgerald*, 457 U.S. 800, 818 (1982));

17 *see also Chappell v. Mandeville*, 706 F.3d 1052, 1056 (9th Cir. 2013) (citation omitted)

18 ("Qualified immunity protects government officials from civil damages 'insofar as their conduct

19 does not violate clearly established statutory or constitutional rights of which a reasonable person

20 would have known*.");Padilla v.  Yoo*, 678 F.3d 748, 758 (9th Cir.  2012); *Pearson v.  Callahan*,

21 555 U.S. 223 (2009). "Qualified immunity balances two important interests—the need to hold

22 public officials accountable when they exercise power irresponsibly and the need to shield

23 officials from harassment, distraction, and liability when they perform their duties reasonably."

24 *Pearson*, 555 U.S. at 231.

25      "Whether qualified immunity applies thus 'turns on the objective legal reasonableness of

26 the action, assessed in light of the legal rules that were clearly established at the time it was

27 taken.'" *Chappell*, 706 F.3d at 1056 (quoting *Messerschmidt v. Millender*, 132 S.Ct. 1235, 1245

28 (2012)). In other words, a "[g]overnment official's conduct violates clearly established law

1    when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear'

2    that every 'reasonable official would have understood that what he is doing violates that right.'"

3    *al-Kidd*, 131 S.Ct. at 2083 (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S.

4    635, 640 (1987)); *see also Padilla,* 678 F.3d at 758 (citation omitted).

5         "[A] case directly on point [is not required], but existing precedent must have placed the

6    statutory or constitutional question beyond debate." *al-Kidd*, 131 S.Ct. at 2083. "Qualified

7    immunity gives government officials breathing room to make reasonable but mistaken judgments

8    about open legal questions," and courts are "not to define clearly established law at a high level

9    of generality[.]" *Id*. at 2084-85; *see also Dunn v. Castro*, 621 F.3d 1196, 1201 (9th Cir. 2010)

10   ("[T]he right allegedly violated must be defined at the appropriate level of specificity before a

11   court can determine if it was clearly established."). The court considers "whether 'a reasonable

12   officer would have had fair notice that [the action] was unlawful, and that any mistake to the

13   contrary would have been unreasonable.'" *Chappell*, 706 F.3d at 1056-57 (internal citation

14   omitted).

15        At the time of this incident, the law was clearly established that the use of force in a

16   malicious and sadistic manner to cause harm is excessive and violates the Eighth Amendment.

17   *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). While Starling maintains that he only used that

18   force which was necessary to gain Plaintiff's compliance, and only after trying to de-escalate the

19   situation, the court must construe the facts in the light most favorable to Plaintiff in evaluating

20   whether Starling is entitled to qualified immunity. *Johnson v. Bay Area Rapid Transit Dist.*, 724

21   F.3d 1159, 1180 (9th Cir. 2013). Construing the facts as such, the court cannot conclude that a

22   reasonable officer would have continued to punch Plaintiff and "bounce his head on the ground"

23   while he was lying on the ground, face-down, complying with Pauli's and Starling's orders. With

24   the dispute as to these material facts, the court cannot find Starling is entitled to qualified

25   immunity.

26   **D. Request for Counsel**

27        Plaintiff's opposition and cross-motion contain a request for counsel, based on Plaintiff's

28   claim that he is at a maximum security prison with limited access to the law library and no

1    knowledge of the law concerning what he describes as his complex claims. (Docs. # 68/69 at 4,

2    25-32.)

3    As the court has previously explained, a litigant in a civil rights action does not have a Sixth

4    Amendment right to appointed counsel. *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir.

5    1981).  In very limited circumstances, federal courts are empowered to request an attorney to

6    represent an indigent civil litigant.  The circumstances in which a court will grant such a request,

7    however, are exceedingly rare, and the court will make the request under only extraordinary

8    circumstances.  *United States v. 30.64 Acres of Land*, 795 F.2d 796, 799-800 (9th Cir. 1986);

9    *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).  The decision whether to appoint

10   counsel is discretionary with the court. *Harrington v. Scribner,* — F.3d —, 2015 WL 2106387,

11   at * 8 (9th Cir. May 7, 2015).

12          A finding of such exceptional or extraordinary circumstances requires that the court

13   evaluate both the likelihood of success on the merits and the pro se litigant's ability to articulate

14   his claims in light of the complexity of the legal issues involved.  Neither factor is controlling;

15   both must be viewed together in making the finding. *Harrington v. Scribner,* — F.3d —, 2015

16   WL 2106387, at * (9th Cir. May 7, 2015); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir.

17   1991), *citing Wilborn, supra,* 789 F.2d at 1331.

18          Here, Plaintiff is asserting a straightforward excessive force claim against two

19   defendants. Plaintiff has thus far been able to articulate his claims well, filing oppositions to

20   motions as well as cross-motions for summary judgment. Moreover, Plaintiff has not

21   demonstrated a likelihood of success on the merits. As the court pointed out, *supra*, a genuine

22   dispute of fact exists as to the officers' liability. Therefore, Plaintiff's request for the

23   appointment of counsel should be denied.

24                              **IV. RECOMMENDATION**

25          **IT IS HEREBY RECOMMENDED** that the District Judge enter an order **<u>DENYING</u>**

26   Starling's Motion for Summary Judgment (Doc. # 53) and Plaintiff's Cross-Motion for Summary

27   Judgment (Doc. # 69).

28

1    **IT IS FURTHER RECOMMENDED** that the District Judge enter an order **<u>DENYING</u>**

2    Plaintiff's request for the appointment of counsel.

3    **FINALLY, IT IS RECOMMENDED** that the District Judge enter an order **<u>DENYING</u>**

4    Plaintiff's motion for x-rays.

5    The parties should be aware of the following:

6    1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to

7    this Report and Recommendation within fourteen days of receipt. These objections should be

8    titled "Objections to Magistrate Judge's Report and Recommendation" and should be

9    accompanied by points and authorities for consideration by the district judge.

10   2. That this Report and Recommendation is not an appealable order and that any notice of

11   appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed

12   until entry of judgment by the district court.

13

14   DATED: May 21, 2015.

15   _____
     WILLIAM G. COBB

16   UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28